UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

FILED

TOMMY WILCOX,                    )
    Plaintiff(s);              )
                               )
-vs.-                            )
                               )
SOUTHEASTERN MEDICAL SUPPLY,     )
INC. and BILL HUFF,              )
    Defendant(s).              )

97 JUN -2 PM 1: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

No. CV 95-P-2219-W

**ENTERED**

**OPINION**

JUN 0 3 1997

For the following reasons, the Plaintiff and Counter-Defendant Tommy Wilcox's ("Wilcox") Motion for Summary Judgment as to Southeastern Medical Supply's ("Southeastern") is hereby GRANTED IN PART and DENIED IN PART. The motion is granted as to all claims except the claims based on breach of fiduciary duty.

### Facts[1]

Prior to January 1995, Wilcox worked as a sales representative for Syntex Laboratories, where he sold pharmaceuticals to many orthopedic surgeons in the Tuscaloosa area. In or around December 1994, Wilcox met in Tuscaloosa with Defendant Bill Huff ("Huff"), President of Southeastern, and Southeastern's Sales Manager Ken Husted to discuss the terms of an employment contract. In January 1995, Wilcox entered into an employment agreement with Southeastern, a Mississippi corporation which leases durable medical equipment. After Wilcox signed the contract, he traveled to Mississippi to participate in training. In June 1995, Wilcox

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the defendant and counterclaim plaintiff, Southeastern Medical Supply.

wrote to Huff expressing his dissatisfaction with certain circumstances he had encountered and stating that he would consider his employment contract void if these problems were not rectified in sixty days. Wilcox considered his contract voided on August 21, 1995.

Wilcox's employment contract included a "restrictive covenant" which provides that, for two years, the Representative will not "directly or indirectly, own, manage, operate, control, serve as an officer, director, employee, independent contractor or consultant or be connected in any manner with or have any interest in any corporation . . . which conducts business in competition with Company in the Territory." The Company is defined in the contract as Southeastern. The Territory was defined as a portion of north Alabama. Southeastern no longer does business in Alabama. After Wilcox's departure from Southeastern, Wilcox returned the key to the storage facility in which the medical equipment was stored to Southeastern's Tom Hellus. Prior to his leaving Southeastern, Wilcox discussed his plans with Judy Jackson, another Southeastern employee, and offered her a job with his new company. Wilcox started his own medical equipment rental company on September 14, 1995.

According to Huff, Southeastern ceased to do business in the area within a few days of Wilcox's departure. On September 11, 1995, Rodney Pollard was hired to replace Wilcox in the north Alabama territory. Pollard was hired to work for Integrated Therapy Products, Inc. ("ITP"). ITP is a separately incorporated business which is owned and operated by Huff.

Wilcox filed suit against Southeastern and Huff for breach of contract alleging that Southeastern failed to pay his commission as agreed and requesting a declaration by the court that the restrictive covenant not to compete was void or unenforceable. Southeastern filed cross-claims against Wilcox for breach of contract, seeking to enforce the non-compete agreement, breach of

2

fiduciary duty, intentional interference with business relations, misappropriation of trade secrets, and conversion. Wilcox filed a Motion for Summary Judgment as to Southeastern's counterclaims.

## Analysis

### I. Breach of Contract Based on the Non-Compete Agreement

In paragraph 24 of Wilcox's employment contract, the parties agreed that interpretations of the contract would be governed by Mississippi law. However, because of Alabama's public policy disfavoring non-compete agreements, such choice of law as it pertains to non-compete agreements will not be given effect by Alabama courts and Alabama law will apply. *See, e.g.*, *Cherry Bekaert & Holland v. Brown*, 582 So. 2d 502 (Ala. 1991); *Blalock v. Perfect Subscription Co.*, 458 F.Supp. 123 (S.D. Ala. 1978). Therefore, Alabama law will control the interpretation of the non-compete agreement in this case.

Southeastern's breach of contract claim arises from the allegation that Wilcox breached his employment contract by violating the non-compete agreement. Under Alabama statutory law, non-compete agreements are void unless they meet one of two exceptions. Ala. Code § 8-1-1 (1975). First, an employee may agree with his employer that he will refrain from competition in a similar business within a limited area so long as the employer carries on a like business or, second, partners may agree not to carry on a similar business within a limited area. *Id*.

In light of the state's public policy disfavoring non-compete agreements, courts have strictly interpreted these exceptions. Under Alabama case law, "carrying on a like business" has been strictly construed and has been interpreted not to apply to a subsidiary of the company trying to enforce a non-compete agreement. *Russell v. Birmingham Oxygen Serv.*, 408 So. 2d 98 (Ala.

3

1981). The facts in this case are very similar to those in *Birmingham Oxygen Services*.
Southeastern no longer does business in Alabama. According to the evidence submitted,
Southeastern has not carried on business since the time Wilcox left the company. Southeastern
argues that it continues to do business in Alabama as ITP. However, according to Huff,
Southeastern continues as a viable corporation. ITP is a separately incorporated business.
Wilcox's non-compete agreement is not with ITP but rather with Southeastern. Based on the
forgoing facts, taking into account Alabama's public policy disfavoring non-compete agreements
and using a strict construction of the statute, the non-compete agreement in the contract between
Wilcox and Southeastern is unenforceable. Therefore, Wilcox is due to be granted summary
judgment as to Southeastern's breach of contract claim.

## II. Breach of Fiduciary Duty

As a general rule, employees are allowed to compete with former employers. Because the
non-compete agreement is unenforceable against Wilcox, Wilcox has no duty not to compete with
Southeastern. However, an employee has a duty to act in good faith and loyalty to his employer
while in his employ. *Allied Supply Co. v. Brown*, 585 So. 2d 33 (Ala. 1991). "Implicit in this
duty is an obligation not to subvert the principal's business by luring away customers or
employees of the principal, or to otherwise act in any manner adverse to the principal's interest."
*Id.* at 36. Southeastern has offered sufficient evidence that genuine questions of material fact
remain as to Wilcox's activities prior to leaving Southeastern in preparation of starting his own
business. Therefore, Wilcox's motion for summary judgment is due to be denied as it pertains
to Southeastern's claim of breach of fiduciary duty.

III.  Intentional Interference with Business Relations[2]

To establish a claim for intentional interference with business relations under Alabama law, a plaintiff must show (1) the existence of a contractual or business relation; (2) defendant's knowledge of the contractual or business relation; (3) intentional interference by the defendant with a contractual or business relation; (4) absence of justification for the defendant's interference and (5) damage to the plaintiff as a result of the defendant's interference.  *Gross v. Lowder Realty Better Homes & Gardens*, 494 So. 2d 590, 597 (Ala. 1986).  If a non-compete agreement is enforceable against a competitor, then the competitor lacks a justification for interference.  *See, Public Systems, Inc. v. Towry*, 587 So. 2d 969 (Ala. 1991).

Alabama has expressly adopted the competitor's privilege in claims for intentional interference with business relations.  *Soap Co. v. Ecolab*, 646 So. 2d 1366 (Ala. 1994).  Under the competitor's privilege, legitimate economic competition is a justification for interfering with business relations even if carried to the extent of ruining a competitor.  *Id.*  Wilcox has asserted that his actions in securing accounts for his own business are justified under this defense.  From the counter-complaint, it appears that Southeastern's claim for intentional interference is premised on the alleged breach of Wilcox's non-compete agreement.  Because of the foregoing discussion, to the extent that Southeastern's claim is based on a breach of the non-compete agreement, Wilcox's motion for summary judgment is due to be granted.

Although it is not stated as such in the complaint, to the extent that Southeastern's claim is based on activities prior to Wilcox's departure from the company, Wilcox is also due to be

---

2. Because Alabama applies the traditional doctrine of lex loci delicti, the Court is applying Alabama law.  Under these facts, the tort was allegedly committed in Alabama and therefore Alabama law applies.  *See, e.g., Morris v. SSE, Inc.*, 912 F. 2d 1392 (11th Cir. 1990).

5

granted summary judgment because Southeastern has failed to produce substantial evidence that Wilcox intentionally interfered with any contractual relations prior to his departure.[3] Therefore, genuine issues of material fact do not remain as to this potential aspect of the claim.

## IV. Misappropriation of Trade Secret[4]

In its counterclaim, Southeastern alleged violations of the Alabama Trade Secrets Act. In its brief, Southeastern specifies that these alleged violations are related to disclosure of pricing information, how to verify insurance coverage, how to negotiate with insurance companies, proprietary lists of suppliers and list of target customers and their histories. The Alabama Trade Secrets Act defines a trade secret as information used in a trade or business which is not publicly known and cannot be readily ascertained or derived from publicly available information. Ala. Code § 8-27-2 (1975). Under Alabama case law, a trade secret must have been subject to reasonable efforts to maintain its secrecy and must not be publicly known in the trade or business. *Public Sys., Inc. v. Towry*, 587 So. 2d 969 (Ala. 1991). It is the burden of the party asserting trade secret protection to show that reasonable steps were taken to protect secrecy. *Allied Supply Co. v. Brown*, 585 So. 2d 33, (Ala. 1991).

In this case, the prices were known to Southeastern's customers. The customers could disclose the information to Southeastern's competitors in order to secure a more favorable bid from a competitor. Southeastern has offered no evidence that customers were prohibited from disclosing the prices. Suppliers and manufacturers of durable medical equipment do not keep their

---

3. Evidence was submitted that Wilcox may have offered a job to Judy Jackson prior to his leaving Southeastern. However, Jackson apparently did not accept the job because she remained in the employ of Southeastern. Therefore, Southeastern was not damaged by the loss of Jackson.

4. See footnote 2.

6

existence secret. In his deposition, Huff admitted that the suppliers advertised to the public. Likewise, customers who rented from Southeastern would appear to be rather easily ascertained. Presumably, if asked, medical providers would tell anyone who inquired from whom they rented their equipment. In addition, negotiating with insurance companies and verifying coverage are activities many people engage in both inside and outside the medical equipment leasing field. These activities are clearly within the public realm. Therefore, as to counterclaims under the Alabama Trade Secrets Act, Wilcox is due to be granted summary judgment.

## IV. Conversion[5/]

Under Alabama law, the elements for conversion are (1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property. *Gray v. Liberty Nat'l Life Ins. Co.*, 623 So. 2d 1156 (Ala. 1993). Huff has produced no evidence of the existence or description of the property that Wilcox allegedly converted. Huff has admitted that the claim is based only on his belief that Wilcox had some of Southeastern's property but that he could not say what the property was or even describe it. As such, Wilcox is due to be granted summary judgment on Southeastern's claim for conversion.

### Conclusion

Based on the foregoing analysis, Wilcox's motion for summary judgment is due to be granted as to all of Southeastern's counterclaims with the exception of the claim for breach of fiduciary duty. The motion is denied as to that claim.

_____

5. See footnote 2.

7

Dated: June 2, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
Mr. James Fleenor
Mr. Bill Huff

8